# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jose Miguel Valdez Regalado, individually, and on Behalf of themselves and all other similarly situated Persons, known and unknown<br>　　　　Plaintiff,<br><br>　v.<br><br>　　　　　　　　and<br><br>H&J Investments Corp. dba Carmelo's Taco Place and<br><br>Herminio Gonzalez Gonzalez<br>　　　　Defendants. | Case No. 21-CV-6046 |

## COMPLAINT

Plaintiff, Jose Miguel Valdez Regalado ("Plaintiff"), individually and on behalf of themselves and all other similarly situated Persons, known and unknown, by and through their attorneys, Daniel I. Schlade and James M. Dore, complain against H&J Investments Corp. dba Carmelo's Taco Place ("Defendant" or "Carmelo's") and Herminio Gonzalez Gonzalez ("Defendant" or "Gonzalez"). Carmelo's and Gonzalez may collectively be referred to as "Defendants". In support of this Complaint, Plaintiff states:

## Introduction

1. This action seeks redress for Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), as well as any related state law claims, for Defendants' failure to pay overtime wages owed; as we all related violations of the Biometric Information Privacy Act, 740 ILCS 14/1, et. seq. ("BIPA").

## Parties

2. Plaintiff is a resident of Chicago, Illinois; and he was employed by Carmelo's and Gonzalez.

3. Carmelo's is a business that is located, headquartered, and conducts business in Chicago, Illinois.

4. Gonzalez is the owner and Secretary Of Carmelo's, and they are in charge of its employees. On information and belief, Gonzalez is a resident of Chicago, Illinois.

5. Defendants are "an enterprise engaged in commerce or in the production of goods for commerce" under 29 USC § 203(s)(1)(A)(i) and (ii) because they have annual gross volume of sales made or business done of at least $500,000; and because they are engaged in interstate commerce or in the production of goods for interstate commerce.

## Jurisdiction And Venue

6. The Court possesses subject matter jurisdiction over the FLSA claim(s) pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §1337; and supplemental jurisdiction over any related state law claim(s) pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the NORTHERN District of Illinois because all underlying facts and transactions occurred in or about Chicago, Illinois.

## Facts Common To All Claims

8. Carmelo's is an "employer" as that term is defined in Section 203 of the FLSA, because it is a privately owned for-profit entity.

9. Gonzalez is an "employer" as that term is defined in Section 203 of the FLSA, because: (1) they were Plaintiff's head "boss" at Carmelo's; (2) they had the power to hire and fire the employees, including Plaintiff; (3) they supervised and controlled Plaintiff's work schedules and conditions of employment; (4) they determined the rate and method of payment for employees; and (5) they maintained employment records.

## COUNT I: VIOLATION OF THE FLSA

10.     Plaintiff reincorporates by reference Paragraphs 1 through 9, as if set forth in full herein for Paragraph 10.

11.     Plaintiff began working at Carmelo's in or before August 2019.

12.     At all times, Plaintiff held the same position at Carmelo's, they were a cook. Plaintiff was an "employee" of Defendants as that term is used in Section 203 of the FLSA because he was employed by Defendants to perform food preparation, and they do not fall into any of the exceptions or exemptions for workers under the FLSA.

13.     Although schedules are subject to change, Plaintiff's general schedule with Defendants required Plaintiff to work on average 80 hours per week.

14.     Plaintiff was paid their wages on a(n) weekly basis.

15.     Plaintiff's wages were not based on the number of jobs performed or completed, nor was it based on the quality or efficiency of his performance.

16.     Plaintiff's rate of pay was $1,200 per week.

17.     Throughout the course of Plaintiff's employment with Defendants Defendants regularly scheduled and directed Plaintiff to work in excess of forty (40) hours per week.

18.     Defendants did not pay Plaintiff not less than one and a half (1.5) times the regular rate at which he was employed during the hours worked in excess of forty (40) hours per week.

19.     On information and belief, Defendants have failed to keep proper time records tracking Plaintiffs' time worked; and Defendants' failure and refusal to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.

20.     Plaintiff is entitled to recover unpaid overtime wages and liquidated damages for up to three (3) years prior to the filing of this lawsuit. On information and belief, this amount includes: (i) $23100 in unpaid overtime wages; (ii) liquidated damages of $23100; and (iii) Plaintiff's

attorney's fees and costs, to be determined. A calculation of Plaintiff's damages are attached as Exhibit A.

WHEREFORE, Plaintiff Jose Miguel Valdez Regalado respectfully requests that the Court enter a judgment in their favor and against Defendants Carmelo's and Gonzalez jointly and severally, for:

A. The amount of unpaid overtime wages for all time worked by Plaintiff in excess of forty (40) hours in individual work weeks, totaling at least $23100;

B. An award liquidated damages in an amount equal to at least $23100;

C. A declaration that Defendants violated the FLSA;

D. An award reasonable attorneys' fees and costs; and

E. Any such additional or alternative relief as this Court deems just and proper.

### COUNT II: VIOLATION OF IMWL

21. Plaintiff incorporates by reference Paragraphs 1-20, as if set forth in full herein for this Paragraph 21.

22. This count arises from Defendant's violation of the IMWL, by: failing to pay Plaintiff Illinois mandated overtime wages for all hours worked in excess of 40 hours in each individual work week in violation of 820 ILCS 105/4a(1).

23. Defendant's failure to pay Plaintiff the Illinois-mandated overtime wage rate for all hours worked in excess of forty (40) hours in an individual work week is a violation of the IMWL.

24. Pursuant to 820 ILCS 105/12(a), Plaintiff is entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit, treble the amount of such underpayments, 5% for each month the underpayments remain unpaid, plus attorney's fees and costs.

25. The amount of unpaid overtime wages owed to Plaintiff is $ _____ .

**WHEREFORE**, Plaintiff Jose Miguel Valdez Regalado respectfully requests that the Court enter a judgment in his favor and against Defendants Carmelo's and Gonzalez jointly and severally, for:

A. The amount of wages worked by Plaintiff for which he was not paid overtime wages, totaling at least $23100;

B. Award Statutory damages for Plaintiff, including treble damages and 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 105/12(a) and/or 815 ILCS § 205/2;

C. Declare that Defendants have violated the IMWL;

D. Award reasonable attorneys' fees and costs as provided by the IMWL; and/or

E. Grant such additional or alternative relief as this Honorable Court deems just and proper.

## Class Claims

### COUNT III
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq

26. Plaintiff reincorporates by reference Paragraphs 1 through 9, as if set forth in full herein for Paragraph 26.

27. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints and palm scans. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics".

28. This count concerns the misuse of individuals' biometrics by Defendant Carmelo's.

29. Defendant Carmelo's was and/or is capturing, storing, using, and/or disseminating the biometrics of Plaintiff and other Class members without their informed written consent as required by law.

30. Defendant's biometric technology captures, collects, or otherwise uses biometrics including fingerprints, or portions and/or data derived therefrom, to authenticate the identity of individuals.

31. Biometric technology allows companies to reduce timekeeping fraud. Unfortunately, along with the increased utility of biometric technology, so too come grave privacy risks associated with the unauthorized or malicious dissemination of this information.

32. The risk of harm is greatly magnified when biometrics are obtained in violation of reasonable regulations designed to protect individuals' irreplaceable information. The permanent and irreplaceable nature of one's biometrics makes the illegal collection of the same a significant public problem with far-reaching consequences, including irreversible identity theft.

33. Recognizing the irreversible harm presented by allowing the unregulated collection and use of biometrics, Illinois passed the BIPA, a statute addressing the collection, use, retention, possession, and dissemination of biometrics by private entities, such as Defendant Carmelo's.

34. Under BIPA, a biometric system, such as Defendant Carmelo's system, is legal if, and only if, Defendant first:

    (1) informs the person whose biometrics are to be collected in writing that biometric identifiers or biometric information will be collected or stored;

    (2) informs the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used;

    (3) receives a written release from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information; and

     (4) publishes publicly available retention guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

35. Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper. BIPA's requirements bestow a right to privacy in biometrics and a right to make an informed decision when electing whether to provide or withhold biometrics.

36. At the time the BIPA was passed in 2008, another data privacy statute, the Personal Information Protection Act, 815 ILCS § 530 et seq. ("PIPA"), had been law in Illinois since 2006. PIPA provided a private right of action if a company possessing an individual's unique biometric data (the same data regulated by the BIPA) suffers a data security breach and fails to give affected consumers proper notice of such a breach. Further, numerous state and federal statutes, including the Illinois Consumer Fraud Act, also provide consumers a remedy in the event of an actual breach.

37. Defendant Carmelo's biometric timekeeping system works by extracting biometric information from individuals, such as fingerprints or portions thereof, and subsequently using the same for authentication and timekeeping purposes. The system includes the dissemination of biometrics to third parties, such as data storage vendors and payroll services. The biometrics are stored and repeatedly used each time a worker "clocks in" or "out" on the job.

38. The Illinois Legislature has found that "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information like Social Security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to each individual and therefore, once compromised, such individual has no recourse, is at a heightened risk for identity theft in, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5. The risk is compounded when a person's

biometric information is also associated with his/her Social Security Number and potentially other relevant financial information or personal identifiable information. The gravity of the unresolvable problems created in the event of a data breach is so severe that the unlawful collection of such information constitutes actual harm.

39. Plaintiff brings this action for damages and other remedies resulting from the actions of Defendant Carmelo's in capturing, storing, using, and disseminating his/her biometrics, and those other individuals throughout the state of Illinois, without informed written consent, and without informing them through a publicly available policy of how and when the subject biometrics would be stored or disposed of, in direct violation of the Illinois BIPA.

40. To the extent Defendant is still retaining Plaintiff's biometrics, such retention is unlawful. Plaintiff would not have provided his biometric data to Defendant or utilized its biometric timekeeping technology had he known the same would remain with Defendant for an indefinite period or subject to unauthorized disclosure.

41. On behalf of himself and the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class members and common law monetary damages to be determined at trial, together with costs and reasonable attorneys' fees.

42. During the relevant time, Plaintiff worked at Defendant Carmelo's premises.

43. Defendant Carmelo's uses biometric scanning technology to monitor and track its employees' and other staffers, including Plaintiff's, time.

44. For at least the last two months of Plaintiff's employment at Defendant Carmelo's facilities he was required to scan his fingerprints and/or other biometrics into Defendant's biometric

timekeeping device each time s/he needed to "clock-in" and "clock-out". The system ensures that Plaintiff could only verify his attendance and timeliness using the device. Defendant was aware that Plaintiff and other class members would be required to utilize the biometric timekeeping technology.

45. Plaintiff relied on Defendant Carmelo's to not only provide a lawful and legally compliant system, but to also disclose all material information regarding the technology and system, including retention, destruction, and dissemination policies.

46. Defendant Carmelo's was aware, or reckless in failing to be aware, that its employees and staffers would be subject to its biometric technology. Carmelo's was aware that its biometric technology would be capturing, collecting, utilizing, and/or disseminating the biometrics of Plaintiff and the Class members.

47. Defendant Carmelo's biometric technology allows for and resulted in the dissemination of Plaintiff and other Class member's biometrics to third parties, including vendors for timekeeping, data storage, and payroll purposes.

48. Prior to taking Plaintiff's biometrics through its biometric technology, Defendant Carmelo's did not inform Plaintiff in writing that his biometrics were being collected, stored, used, or disseminated, or publish any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics. Defendant did not seek, and Plaintiff never provided, any written consent relating to the collection, use, storage, or dissemination of his biometrics.

49. Prior to taking Plaintiff's biometrics, Defendant Carmelo's did not make publicly available any written policy as to a biometric retention schedule and guidelines for permanently destroying the collected biometrics.

50. Additionally, Defendant Carmelo's did not obtain consent from Plaintiff for the dissemination of his biometrics to third parties.

51. To this day, Plaintiff is unaware of the status of his biometrics obtained by Defendant Carmelo's. Defendant has not informed Plaintiff whether it still retains his biometrics, and if it does, for how long it intends to retain such information without his consent.

52. Plaintiff has suffered pecuniary damages in the form of lost wages, diminution in the unique identifying value of his biometrics, and other costs associated with identity protection

53. Furthermore, Plaintiffs biometrics are economically valuable and such value will increase as the commercialization of biometrics continues to grow. Defendant's repeated use of Plaintiff's biometrics does and will continue to confer a benefit on Defendant for which Plaintiff was not sufficiently compensated.

54. At the time Plaintiffs biometrics were captured, Defendant did not have a publicly available policy of informing individuals, including Plaintiff, of what happens to their biometrics after they are captured, whether the information is disseminated to a third party and, if so, which third party, and what would happen to the data if Defendant was to be acquired or file bankruptcy.

55. Plaintiff experiences mental anguish and injury when s/he thinks about the status of his biometrics and who has, or could have, access to such private information; what would happen to his biometrics if Defendant or their clients went bankrupt or otherwise sold their assets; whether Defendant will ever delete his biometric information; what would happen if Defendant or their clients were to experience a data breach; and how any such breach would result in irreparable harm to his identity. This harm is even more acute because an individual with access to Plaintiff's

biometrics could potentially access other financial accounts or health records which may currently, or at some time in the future, be secured through his biometrics.

56. By failing to comply with BIPA, Defendant has violated Plaintiff's substantive state rights to biometric information privacy.

**Class Allegations**

57. Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

> Class: All Carmelo's employees or agents and staffers whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant or its technology within the State of Illinois any time within the applicable limitations period

58. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

59. Upon information and belief, there are at least twenty of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's personnel records.

60. Plaintiff's claims are typical of the claims of the members of the Class s/he seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the

Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's BIPA violations and common law transgressions.

61. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendant's timekeeping technology and associated conduct is subject to BIPA;

    b. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics;

    c. Whether Defendant obtained a written release from the Class before capturing, collecting, or otherwise obtaining their biometrics;

    d. Whether Defendant provided a written disclosure that explains the specific purposes, and the length of time, for which biometrics were being collected, stored and used before taking such biometrics;

    e. Whether Defendant's conduct violates BIPA;

    f. Whether Defendant's conduct is negligent;

    g. Whether Defendant's violations of the BIPA are willful or reckless; and

    h. Whether Plaintiff and the Class are entitled to damages and injunctive relief;

    i. Whether Defendant provided a written disclosure that explains the specific purposes, and the length of time, for which biometrics were being collected, stored and used before taking such biometrics.

62. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

63. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

64. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

65. Defendant is a private entity under BIPA.

66. BIPA requires private entities, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject ... in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information ....". 740 ILCS 14/15(b).

67. Illinois's BIPA also requires that private entities in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention

policy. Entities which possess biometric identifiers or information must (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual); and (ii) adhere to the publicly posted retention and deletion schedule.

68. Plaintiff and the other Class members have had their "biometric identifiers", namely their fingerprints, collected, captured, received or otherwise obtained by Defendant and/or its technology. Plaintiff and the other Class members' biometric identifiers were also used to identify them, and therefore constitute "biometric information" as defined by BIPA. 740 ILCS 14/10

69. Each instance Plaintiff and the other Class members had their fingerprints scanned into Defendant's biometric devices, Defendant and/or its technology captured, collected, stored, and/or used Plaintiffs and the other Class members' biometric identifiers or biometric information without valid consent and without complying with and, thus, in violation of BIPA.

70. Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

    a. Defendant failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

    b. Defendant failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

    c. Defendant failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

    d. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

e. Defendant failed to provide a publicly available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics they store, as required by 740 ILCS14/15(a); and/or

f. Defendant failed to obtain informed consent to disclose or disseminate the Class' biometrics, as required by 740 ILCS 14/15(d)(1).

71. By designing and operating an employee timekeeping system which uses biometrics that was devoid of the privacy protections required by BIPA, Defendant profited from Plaintiffs and the Class members' biometric identifiers and biometric information in violation of 740 ILCS 14/15(c). Defendant knew, or was reckless in not knowing, that the biometric systems it was selling, maintaining, and/or servicing would be subject to the provisions of BIPA yet wholly failed to comply with the statute.

72. By capturing, collecting, storing, using, and disseminating Plaintiffs and the Class members' biometrics as described herein, Defendant denied Plaintiff and the Class their right to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in the BIPA.

73. Had Defendant informed Plaintiff that he was not being provided with the required information regarding his biometrics and the biometric timekeeping program it was providing as required by law, or that the biometric technology it was providing was not legally compliant, s/he would not have worked in the subject employment conditions or agreed to provide his biometrics without additional compensation.

74. Further, had Defendant provided Plaintiff with all required disclosures, he at least would have been able to make an informed decision concerning material facts of the work environment, including whether the rate of pay and opportunity cost justified participating in the biometric timekeeping program.

75. The BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of the BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA. 740 ILCS 14/20(1).

76. Defendant's violations of the BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

**Wherefore**, Plaintiff, on behalf of himself/herself and the proposed Class, prays for:

a. the certification of the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. a declaration that Defendant's actions violate BIPA;

c. an award of injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with the BIPA requirements for the capture and collection of biometrics, as well as requiring Defendant to comply with the written retention policy requirements of 740 ILCS 14/15(a);

d. an award of statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(1);

e. an award or statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(3);

f. an award of reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3); and/or

g. Grant such additional or alternative relief as this Honorable Court deems just and proper.

                                      Jose Miguel Valdez Regalado, Individually
And On Behalf Of Themselves And All
Other Similarly Situated Persons, Known
And Unknown

                                      s/Daniel I. Schlade
Attorney For Plaintiff

James M. Dore (ARDC No. 6296265)
Daniel Schlade (ARDC No. 6273007)
Attorney For Plaintiffs
6232 N. Pulaski, #300
Chicago, IL 60646
773-550-3775
Email:  jmdore70@sbcglobal.net
        danschlade@gmail.com

**PLAINTIFF DEMANDS TRIAL BY JURY**

# EXHIBIT A

| Week | Av. Hours/Wk. | Hours Over 40 | Hrly. Wage | Unpaid OT | FLSA Liquidated | IMWL Treble |
|---|---|---|---|---|---|---|
| 8/4/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/11/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/18/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/25/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/1/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/8/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/15/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/22/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/29/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/6/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/13/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/20/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/27/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/3/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/10/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/17/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/24/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/1/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/8/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/15/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/22/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/29/2019 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/5/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/12/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/19/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/26/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/2/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/9/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/16/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/23/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/1/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/8/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/15/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/22/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/29/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/5/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/12/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/19/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/26/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/3/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/10/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/17/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/24/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/31/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/7/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/14/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/21/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/28/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/5/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/12/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/19/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/26/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/2/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/9/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/16/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/23/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/30/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/6/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/13/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/20/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/27/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/4/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/11/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/18/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/25/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/1/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/8/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/15/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/22/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 11/29/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/6/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/13/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/20/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 12/27/2020 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/3/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/10/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/17/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/24/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 1/31/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/7/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/14/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/21/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 2/28/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |

| Date | Col2 | Col3 | Col4 | Col5 | Col6 | Col7 |
|---|---|---|---|---|---|---|
| 3/7/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/14/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/21/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 3/28/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/4/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/11/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/18/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 4/25/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/2/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/9/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/16/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/23/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 5/30/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/6/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/13/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/20/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 6/27/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/4/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/11/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/18/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 7/25/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/1/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/8/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/15/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/22/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 8/29/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/5/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/12/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/19/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 9/26/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/3/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/10/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/17/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| 10/24/2021 | 80 | 40 | $15.00 | $300.00 | $300.00 | $900.00 |
| **TOTALS** | | 3080 | | $23,100.00 | $23,100.00 | $69,300.00 |